Ralph M. Stone (rstone@lawssb.com)
Thomas G. Ciarlone (tciarlone@lawssb.com)
SHALOV STONE BONNER & ROCCO LLP
485 Seventh Avenue, Suite 1000
New York, NY 10018
212.239.4340

*Attorneys for Plaintiff*
[Additional Counsel on Signature Page]

08 CV 4110

RECEIVED
MAY 01 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
:
:
David B. Galchutt, Individually and On Behalf : Civil Action No.
of All Others Similarly Situated, :
: CLASS ACTION COMPLAINT
: FOR VIOLATIONS OF FEDERAL
Plaintiff, : SECURITIES LAWS
:
:
vs. :
:
THE BLACKSTONE GROUP L.P., :
STEPHEN A. SCHWARZMAN and :
MICHAEL A. PUGLISI, :
: JURY TRIAL DEMANDED
Defendants. :
:
-----------------------------------------------------------x

Plaintiff makes the following allegations, except as to allegations specifically pertaining to plaintiff and plaintiff's counsel, based upon the investigation undertaken by plaintiff's counsel (which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about The Blackstone Group L.P. ("Blackstone" or the "Company"), press releases and other public statements issued by the Company, and media

reports about the Company) and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of a Class consisting of all persons other than defendants who purchased the common units (referred to hereafter as "common stock") of Blackstone pursuant and/or traceable to the Company's initial public offering on or about June 22, 2007 (the "IPO" or the "Offering") seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§ 77k, 77l(a)(2) and 77o].

3. This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 US.C. §§ 1331 and 1337.

4. Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §§ 1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and Blackstone maintains its executive offices in this District.

5. In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications as well as the facilities of the New York Stock Exchange ("NYSE").

## PARTIES

6. Plaintiff, David B. Galchutt, purchased Blackstone common stock, as set forth in the certification attached hereto and incorporated by reference herein, pursuant and/or traceable to the IPO, and was damaged thereby.

7. Defendant Blackstone, through its subsidiaries, provides alternative asset management and financial advisory services worldwide. Blackstone is organized as a limited liability partnership. The general partner of Blackstone is Blackstone Group Management L.L.C. ("Blackstone Group Management").

8. Defendant Stephen A. Schwarzman ("Schwarzman") was, at all relevant times, Chairman and Chief Executive Officer of Blackstone Management Group. Schwarzman signed the Registration Statement.

9. Defendant Michael A. Puglisi ("Puglisi") was, at all relevant times, Chief Financial Officer of Blackstone Management Group. Puglisi signed the Registration Statement.

10. Defendants Schwarzman and Puglisi are collectively referred to herein as the "Individual Defendants."

11. By reason of their management positions and their ability to make public statements in the name of Blackstone, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) Blackstone to engage in the conduct complained of herein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf itself and all persons other than defendants who purchased

the common stock of Blackstone pursuant and/or traceable to the Company's IPO. Excluded from the Class are defendants herein, members of their immediate family, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

13. The members of the Class are so numerous that joinder of all members is impracticable. Blackstone sold more than 133 million shares of common stock in the IPO. The precise number of Class members is unknown to plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Blackstone or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

14. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

15. Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

16. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be

relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

17. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether the Prospectus and Registration Statement issued by defendants to the investing public in connection with the IPO omitted and/or misrepresented material facts about Blackstone and its business; and

(c) the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

18. Defendant Blackstone describes itself as "a leading global alternative asset manager and provider of financial advisory services" and "one of the largest independent alternative asset managers in the world, with assets under management of approximately $88.4 billion as of May 1, 2007."

19. Prior to the IPO, Blackstone effected a reorganization of its businesses into a holding partnership structure. Blackstone is now a holding partnership and the sole general partner of each of the partnership entities that holds Blackstone's various businesses.

20. Blackstone generates earnings through management and performance fees of its general partnership. The Company earns management fees from its limited partners for managing money in its various funds. Blackstone charges a management fee of 1.5% on its assets under management. The Company also earns performance fees of twenty (20) percent of the profits generated on a return on capital it invests for its limited partners.

21. Blackstone is also subject to a "claw-back" of performance fees which requires the Company to refund to limited partners in its funds performance fees that have already been paid if the investments perform poorly.

22. On or about June 21, 2007, Blackstone filed with the SEC a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

23. Thereafter, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and, including the exercise of the over-allotment, more than 133 million shares of Blackstone's common units were sold to the public at $31 per unit, thereby raising more than $4 billion.

24. The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

25. Specifically, the Registration Statement failed to disclose that certain of the Company's portfolio companies were not performing well and were of declining value and, as a result, Blackstone's equity investment was impaired and the Company would not generate anticipated performance fees on those investments or would have fees "clawed-back" by limited partners in its funds.

26. For example, at the time of the IPO, Blackstone's investment in FGIC Corporation ("FGIC") was performing poorly.

27. FGIC was founded in 1983 and was one of the four leading monoline financial guarantors ("monoline"). FGIC is the parent company of Financial Guaranty, its bond insurance arm. Monolines such as Financial Guaranty insure bonds that have been issued by other entities. Financial Guaranty purports to leverage its AAA financial strength rating by Moody's Investors Service ("Moody's"), Standard & Poor's Ratings Services ("Standard & Poor's") and Fitch Ratings ("Fitch") to guarantee the timely repayment of bond principal and interest of an issuer in the event the issuer defaults, thus allowing the debt issued to get the highest possible rating. Financial Guaranty's financial guarantee is designed to protect investors in the event of securities default.

28. Blackstone owns a twenty-three (23) percent equity ownership interest in FGIC. The Company purchased its ownership in FGIC along with PMI Group Inc. ("PMI") and Cypress Group ("Cypress"). The consortium purchased an 88% interest in FGIC from General Electric Co. in 2003 for $1.86 billion.

29. Traditionally, Financial Guaranty focused mainly on conservative municipal bonds. In recent years, lured by larger profits and higher growth rates, Financial Guaranty began writing insurance on collateralized debt obligations ("CDOs"), including CDOs backed by subprime mortgages to higher-risk borrowers. CDOs are a type of asset-backed security and structured credit product. CDOs repackage bonds, mortgages and other assets into new securities and then use the income from the underlying debt to pay investors. CDOs are secured or backed by a pool of bonds, loans or other assets, where investors buy slices classified by varying levels of debt or credit risk.

30. By the time of the IPO, the Company's investment in FGIC was materially impaired as FGIC's bond insurance arm, Financial Guaranty, had significant exposure to defaults on bonds it insured due to the plunge in value of mortgage debt.

31. Similarly, at the time of the IPO, Blackstone's equity investment in Freescale Semiconductor was not performing well and was materially impaired.

32. Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement was required to disclose that certain of the Company's portfolio companies were not performing well and were of declining value and, as a result, Blackstone's equity investment was impaired and the Company would not generate anticipated performance fees on those investments or would have fees "clawed-back" by limited partners in its funds. The Registration Statement failed to contain any such disclosure.

33. In the months after the IPO, details of the problems with some of Blackstone's portfolio companies slowly began to become known to the market and the price of Blackstone stock substantially declined.

34. On March 10, 2008, Blackstone issued a press release announcing its financial results for the full year of 2007 and the fourth quarter of 2007, the periods ending December 31, 2007. Among other things, the Company reported that it had written down its investment in FGIC by $122.9 million and that for the fourth quarter its "Total Reportable Segment Revenues declined to $366.9 million from Total Pro Forma Adjusted Reportable Segment Revenues of $1.21 billion in the quarter ended December 31, 2006, primarily due to decreased revenues in the Corporate Private Equity and Real Estate segments. The revenue declines in the Corporate Private Equity and Real Estate segments in the fourth quarter of 2007 were mostly due to lower net appreciation of the

investment portfolio as compared to the prior year, as well as a significant decrease in the value of Blackstone's portfolio investment in Financial Guaranty Insurance Company, a monoline financial guarantor."

35. As of mid-April, 2008, Blackstone common units trade in a range of $19.00 per share, approximately 38% below the IPO price of $31.00 per share.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above.

37. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

38. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

39. Blackstone is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

40. As issuer of the shares, Blackstone is strictly liable to plaintiff and the Class for the misstatements and omissions.

41. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

42. By reasons of the conduct herein alleged, each defendant violated, and/or controlled person who violated, Section 11 of the Securities Act.

43. Plaintiff acquired Blackstone shares pursuant or traceable to the Registration Statement.

44. Plaintiff and the Class have sustained damages. The value of Blackstone common stock has declined substantially subsequent to and due to defendants' violations.

45. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT II

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained above.

47. This Count is brought pursuant to Section 15 of the Securities Act against the individual Defendants.

48. Each of the Individual Defendants was a control person of Blackstone by virtue of his position as a director and/or senior officer of Blackstone. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Blackstone.

49. Each of the Individual Defendants was a culpable participant in the violation of Section 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A.   declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.   awarding plaintiff and other members of the Class damages together with interest thereon;

C.   awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

D.   awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

        Respectfully submitted,

        SHALOV STONE BONNER & ROCCO LLP

DATED: May 1, 2008      By: /s/ Ralph M. Stone

        Ralph M. Stone (rstone@lawssb.com)
        Thomas G. Ciarlone (tciarlone@lawssb.com)

485 Seventh Avenue, Suite 1000
New York, NY 10018
Tel. 212.239.4340
Fax 212.239.4310

Robert M. Roseman (rroseman@srk-law.com)
David Felderman (dfelderman@srk-law.com)
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street
Suite 2500
Philadelphia, PA 19103
Tel. 215.496.0300
Fax 215.496.6611

*Attorneys for Plaintiff*